Jeffrey R. Menard, Esq. SBN 248508
1880 Grand Avenue
San Diego, CA 92109
Telephone: (848) 240-2566

Attorney for Plaintiff
CIRILO CRUZ

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRILO CRUZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AURORA LOAN SERVICES, LLC; SCME MORTGAGE BANKERS, INC.;  ING BANK, F.S.B;  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.; QUALITY LOAN SERVICE CORPORATION; and DOES 1 to 100<br><br>Defendants. | Adversary Proceeding No.: 11-90116-MM<br>Bankruptcy Case No.: 11-1133-MM13<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES & OTHER EQUITABLE RELIEF<br><br>1. Intentional Misrepresentation<br>2. Negligent Misrepresentation<br>3. Breach of Contract<br>4. Breach of the Implied Covenant of Good Faith & Fair Dealing<br>5. Promissory Estoppel<br>6. Wrongful Foreclosure<br>7. Quiet Title<br>8. Violation of California Business & Professions Code § 17200, *et. seq.*<br><br>**UNLIMITED CIVIL CASE**<br><br>**DEMAND FOR JURY** |

COMES NOW PLAINTIFF CIRILO CRUZ who alleges damages and seeks equitable relief against the Defendants, and each of them as follows:

## JURISDICTION & VENUE

1.      Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United Stated Code in that this proceeding arises in and is related to the above-captioned Chapter 13 case under Title 11 and concerns property of the Debtors in that case.  This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code, Section 157(b)(2) of Title 28 of the United States Code.  This Court has supplemental jurisdiction to hear all state law claims pursuant to

Section 1367 of Title 28 of the United States Code.  This matter is primarily a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order.  However, in the event this case is determined to be a non-core proceeding then and in that event the Plaintiff consents to the entry of a final order by the Bankruptcy Judge.  Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.**PRELIMINARY ALLEGATIONS**

2.       At all times relevant herein, Plaintiff CIRILO CRUZ (hereinafter "Plaintiff") is the owner of a property in San Diego County whose address is 3148 Toopal Drive, Oceanside, CA 92054 and was the borrower on the Deed of Trust at issue in this First Amended Complaint.

3.       At all times relevant herein, Plaintiff is informed and believes that Defendants AURORA LOAN SERVICES, LLC (hereinafter "Aurora"), SCME MORTGAGE BANKERS, INC. (hereinafter "SCME"), ING BANK (hereinafter "ING"), MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. ("MERS"), and QUALITY LOAN SERVICES CORPORATION (hereinafter "Quality") are corporations, limited liability companies or other forms of business entities doing business in San Diego County, California and/or is the Trustee on the First Deed of Trust as issue in this First Amended Complaint.

4.       At all times relevant herein, Plaintiff is informed and believes and thereon alleges that, DOES 1 through 100, inclusive, true names, identities and capacities, whether individual, corporation, association, partnership or otherwise are at this time unknown to Plaintiff who therefore sues said Defendants by such fictitious names and will so amend the First Amended Complaint to show the true names and capacities of such Doe Defendant(s) when the same are ascertained.

5.     At all times relevant herein, Defendant is sued and was acting as principal(s), employer(s) and/or the agent(s), servant(s) and employee(s) of said principal(s) or employer(s), and all of the acts performed by them, or their agents, servants and employees, were performed with the knowledge and under the control of said principal(s) or employer(s) and all such acts performed by such agents, servants and/or employers, were performed within the course and scope of their authority.

## STATEMENT OF FACTS

6.      On or about December 24, 2004, Plaintiff purchased a property located at 3148 Toopal Drive, Oceanside, CA 92054 (hereinafter "Property") by obtaining a first mortgage secured by the First Deed of Trust for $400,000.00 and a second mortgage secured by the Second Deed of Trust for $30,000.00 from Defendant SCME.  Plaintiff paid $100,000.00 as a down payment when he purchased the Property. The first mortgage (the "Subject Note") secured by the First Deed of Trust (the "Subject Deed of Trust") are attached as Exhibits A and B.

7.      Plaintiff used the lending services of Defendant SCME when he purchased the Property.

8.      Defendant Aurora was the servicer of the mortgage.

9.      Defendant SCME is identified as the lender on the First Deed of Trust and Defendant MERS is named as the nominee for the Lender and the beneficiary.  The original trustee as disclosed on the First Deed of Trust is declared to be Stewart Title Company.

10.      Plaintiff was current on his mortgage payments when he consulted with a loan modification consultant.    Plaintiff was seeking advice regarding a loan modification as the payments were becoming unaffordable and unsustainable.  Without the Plaintiff's knowledge, the loan modification consultant gave Plaintiff defective legal advice and advised Plaintiff to stop making his mortgage payments as a means to obtain a loan modification.

11.      On or about June 17, 2009, Defendant Quality recorded a Notice of Default against the Property.

12.      On or about July 30, 2009, Defendant Quality recorded a Substitution of Trustee against the Property.

13.      In or around September 2009, Defendant Quality recorded a Notice of Trustee's Sale against the Property.

14.      Upon learning that the loan modification consultant gave him incorrect legal advice, Plaintiff immediately contacted Aurora to resolve the situation to avoid foreclosure.

15.      On or about October 2, 2009, Plaintiff and Aurora agreed to a forbearance contract whereupon Aurora would not sell the Plaintiff's property and would consider Plaintiff for a permanent loan modification in exchange for the Plaintiff making a fixed monthly payment to Aurora for every month for a period of six months.  The agreement is attached as Exhibit C and is incorporated by reference.

16.     Plaintiff made all six payments on time, as required under the forbearance contract.  After each payment, Plaintiff called Aurora to verify that they received his payment.

17.     On April 14, 2009, at 12:26 pm, Irene Heredia, an employee of CCG Financial Services, calling from San Diego as Power of Attorney on behalf of Plaintiff spoke to Rachel (ID# R5P), who is an Aurora representative in their loss mitigation department who is authorized to provide information, review files, stop foreclosure sales and modify loans.  The true legal identity of Rachel (ID# R5P) can only be discovered through discovery as the representatives of Aurora will not reveal their true identities to the borrowers over the phone.  Rachel (ID# R5P) told Irene Heredia, an employee of CCG Financial Services, over the phone that there is no sale date set, to keep making the forbearance payments until a decision is made, that Aurora will not sell the property while his application is in review, that there is nothing else for Plaintiff to do and to just wait, that an unidentified negotiator has been assigned and it will take 120 days to review the loan application but to keep making the forbearance payments.

18.     On April 29, 2009, at 8:05 am, Irene Heredia, an employee of CCG Financial Services, calling from San Diego as Power of Attorney on behalf of Plaintiff spoke to Irene (ID# IV3), who is an Aurora representative in their loss mitigation department who is authorized to provide information, review files, stop foreclosure sales and modify loans.  The true legal identity of Irene (ID# IV3) can only be discovered through discovery as the representatives of Aurora will not reveal their true identities to the borrowers over the phone.  Irene (ID# IV3) told Irene Heredia, an employee of CCG Financial Services, over the phone that there is no sale date set, to keep making the forbearance payments until a decision is made, nothing has changed and to just wait for a decision.

19.     On May 19, 2009, at 9:36 am, Irene Heredia, an employee of CCG Financial Services calling from San Diego as Power of Attorney on behalf of Plaintiff spoke to Arleen (ID# 71V), who is an Aurora representative in their loss mitigation department who is authorized to provide information, review files, stop foreclosure sales and modify loans.  The true legal identity of Arleen (ID# 71V) can only be discovered through discovery as the representatives of Aurora will not reveal their true identities to the borrowers over the phone.  Arleen (ID# 71V) told Irene Heredia, an employee of CCG Financial Services, over the phone that there is no sale date set, to keep making the forbearance payments until a decision is made.

20.    On June 4, 2009, at 10:11 am, Irene Heredia, an employee of CCG Financial Services, calling from San Diego as Power of Attorney on behalf of Plaintiff spoke to Arleen (ID# 71V), who is an Aurora representative in their loss mitigation department who is authorized to provide information, review files, stop foreclosure sales and modify loans.  The true legal identity of Arleen (ID# 71V) can only be discovered through discovery as the representatives of Aurora will not reveal their true identities to the borrowers over the phone.  Arleen (ID# 71V) initially told Irene Heredia, an employee of CCG Financial Services, over the phone that there is no sale date set, to keep making the forbearance payments until a decision is made then after she further investigated the file, presumably in her computer, she noticed that this property was sold on June 2, 2010.  She then notified Irene Heredia, an employee of CCG Financial Services, that the property was sold.

21.    In April 2010 and May 2010, Plaintiff paid Aurora the amount required under the forbearance agreement each month.

22.    In June 2010, Plaintiff paid the amount required under the forbearance to Aurora.  However, after the payment was accepted by Aurora, he was informed by Aurora that his house was sold.

23.    Plaintiff subsequently had his loan documents analyzed by a mortgage professional on or about June 17, 2010 and discovered multiple violations of state law, including fraud that occurred during the origination of his loan.

24.    Plaintiff learned the loan documentation provided to the Plaintiff falsely understated the cost of the loan.  Some of these misrepresentations are included on the Truth in Lending Statement, attached as exhibit D and incorporated by this reference, whereupon the interest rates of the adjustable rate Subject Note were understated as to make the loan appear more affordable than it actually was.

25.    The Truth in Lending disclosure statement, attached as Exhibit D and incorporated by this reference, says in plain English "THE PAYMENT SCHEDULE AND ANNUAL PERCENTAGE RATE DISCLOSED HERE AS ESTIMATED ASSUMING THAT THE CURRENT INDEX RATE WILL NOT INCREASE OR DECREASE THROUGHOUT THIS LOAN TERM".  This statement is false.

26.    The Adjustable Rate Note discloses 5.875% (see exhibit A) as the interest rate for the first 60 months of interest only payments.  In the third series of payments (see exhibit D), the

lender chose to forecast a lower index interest rate, the lender instead reduced the rate from 5.8750% in the first series of payments to 4.875% for the third series of payments. This is a deceptive practice meant to mislead and deceive the borrower.  The calculation for the last 20 years of the loan is contradictory to the plain English statement on the same form that notifies the Plaintiff that the estimated payments are calculated based on the interest rates never changing.

27.     The Defendants disclosed to the Plaintiff in plain English that his estimated payments disclosed on the disclosure statement were based on and index interest rate of 5.875% but then calculated the final 240 payments (20 years) at an index interest rate 1% lower in order to hide the true cost of the loan and to defraud the Plaintiff.

## FIRST CLAIM FOR RELIEF
### (Intentional Misrepresentation)

COMES NOW PLAINTIFF and for a separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against all named Defendants and DOES 1-25, alleges as follows:

28.     Plaintiff repeats and re-pleads paragraphs 1 through 27 and incorporates the allegations by reference as though fully set-forth herein.

29.     During the loan transaction that closed on or about December 23, 2004, in San Diego county, Defendant SCME defrauded Plaintiff by intentionally concealing or suppressing material facts from Plaintiff.  The true identity of the party or parties that drafted the disclosure forms can only be identified through discovery as the drafting parties do not identify themselves on the paperwork.

30.     Defendants intentionally misrepresented the cost of the loan by informing the Plaintiff that the estimated payments were calculated using a forecasted interest rate index of 5.875% when the estimated payments for the last 20 years were actually calculated using a forecasted interest rate index of 4.875%.  Had Plaintiff known the true cost of the loan he would not have signed this loan with SCME.  Defendants knew that if they accurately disclosed the true

cost of this loan that Plaintiff would not have signed this loan.  Defendants intentionally induced the Plaintiff to alter his position misrepresenting the true cost of this loan.

31.     Plaintiff justifiably relied on these estimates when deciding whether to accept the loan offer.  The amount of the monthly payments was a material factor that Plaintiff considered in deciding if he was going to accept this loan proposal.

32.     Defendants were fully aware of the interest index misrepresentation, and they intentionally understated the final 20 years of payments in order to entice Plaintiff into signing this predatory loan.

33.     Due to the misrepresentation by Defendants, Plaintiff has now lost his home and all of the money he had invested.

34.     Plaintiff had no knowledge of the interest misrepresentation at the time of the closing and would not have discovered the fraud until 2015 when fraudulent, under-represented payments took effect.

35.     Plaintiff does not possess the mathematical skills required to discover this payment misrepresentation.

36.     Only a mathematician or skilled auditor would notice the fraudulent misrepresentation in the estimated payments.

37.     When signing his loan, Plaintiff diligently looked over the truth in lending disclosure statement but could not have reasonably been expected to notice the interest rate discrepancy as the Plaintiff is not mathematically sophisticated enough to find the misrepresentation.

38.     Plaintiff discovered the interest rate misrepresentation on or about June 17, 2010 when the auditor completed his audit.

39.     On information and belief, Defendant ING purchased the Plaintiff's mortgage after origination and Aurora was acting as agent for ING.

40.     Defendant Aurora, on behalf of Defendants ING and/or MERS, intentionally, fraudulently represented that they would not sell the Property if the Plaintiff complied with the forbearance agreement and Aurora also intentionally and fraudulently misrepresented to the Plaintiff that they would consider his application for a loan modification.  Despite Plaintiff's compliance with the forbearance agreement, Defendant Aurora, on behalf of ING, directed Defendant Quality to sell the Plaintiff's Property at a Trustee's Sale.

41.     This representation is a material misrepresentation because had Plaintiff known that Aurora never had any intention of giving Plaintiff a permanent loan modification, Plaintiff would have never entered into the forbearance agreement.  Had Plaintiff known that Aurora would sell their property on June 2nd, 2010, Plaintiff would have never entered into the forbearance agreement and the Plaintiff certainly would not have made the May 5th, 2010 payment.

42.     Defendants intentionally misrepresented the forbearance agreement to Plaintiff because Aurora wanted to extract more money from the Plaintiff until Aurora was ready to sell the property.  Aurora induced the Plaintiff with these promises because Aurora knew that if these promises were never made, Plaintiff would not have agreed to a forbearance agreement and Aurora would not have received an additional 8 payments totaling more than $17,000.

43.     Plaintiff justifiably relied on the material promise and good faith of Aurora that they would not sell his property while he was making the payments and that Aurora was going to review his loan modification application in good faith.

44.     As a result of this material misrepresentation, Plaintiff has lost his home and all money he had invested into his home.

45.        Plaintiff is informed and believes and thereon alleges that as a legal result of the misrepresentations of Defendants, Plaintiff has suffered economic and compensatory damages in an amount in excess of $25,000.00 in an amount that will be proven at trial

46.        Defendant ING is the successors in interest to Defendant SCME.

47.        Plaintiff is informed and believes the aforementioned loan was sold and resold until it fell under a service contract with ING, Aurora, and Quality.  The above mentioned defects in the loan documents constitute notice that the loan was defective as any reasonable underwriter reviewing the loan file would see the errors contained on the face of the documents. Thus any successor or assignee claiming an ownership or beneficial interest in the note underlying this loan cannot claim BFP status as the defects are obvious to any underwriter reviewing the documents in the course of a due diligence examination.

48.        Defendant MERS was fraudulently listed as the beneficiary on the Deed of Trust when it in fact had no ownership interest in the mortgage.

49.        In the Deed Upon Sale, attached as exhibit E and incorporated by this reference, Defendant, ING claims they were the beneficiary throughout the entire foreclosure process.

50.        MERS and ING both claim to be the beneficiary during the foreclosure.  The Deed Upon Sale was reconveyed to ING which suggests ING is the lawful beneficiary of the Deed of Trust which would render the entire foreclosure process void.

51.        Defendants committed the acts herein alleged maliciously, intentionally, fraudulently, and oppressively, with the reckless disregard of Plaintiff's rights.  Conduct by the Defendants amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manner thereby entitling Plaintiff to recover punitive damages from Defendants SCME, ING, Aurora, MERS, and Quality, in an amount according to proof.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

## SECOND CLAIM FOR RELIEF
### (Negligent Misrepresentation)

COMES NOW PLAINTIFF and for a separate and distinct CLAIM FOR RELIEF for Negligent Misrepresentation against Defendants SCME, ING and DOES 1-25, alleges as follows:

52.     Plaintiff repeats and re-pleads paragraphs 1 through 51 and incorporates the allegations by reference as though fully set-forth herein.

53.     SCME had a duty to insure that their representations concerning the Subject Note were true and accurate.

54.     As alleged herein, despite their duty to make accurate representations concerning the terms of the Subject Note, the representations made by SCME were in fact false.  The true facts were that the loan transaction was not as represented

55.     When SCME made these representations, they should have known them to be false.  The misrepresentations were made through documentation provided by SCME and provided to Plaintiff, so as to induce Plaintiff to act in reliance on these representations in the manner hereafter alleged, or with the expectation that Plaintiff would so act.

56.     Plaintiff, at the time that these representations were made by SCME, was ignorant of these misrepresentations and had no reason to suspect that there were any misrepresentations in the loan origination paperwork.  In good faith reliance upon these representations, Plaintiff was induced to and did enter into the loans as alleged herein.  Had the Plaintiff known the actual facts, he would have not signed the loan documents at closing.

57.     Aurora negligently misrepresented to Plaintiff that they would not sell his home while he was being reviewed for a loan modification.

58.     As alleged herein, despite their duty to make accurate representations concerning the sale of the property and the loan modification, the representations made by Aurora were in fact false.  The true facts were that the Aurora never intended to give Plaintiff a loan modification and Aurora always intended to sell the Plaintiff's house.

59.     When Aurora made these representations, they should have known them to be false.  The misrepresentations were made through telephonic conversations by Aurora so as to induce Plaintiff to act in reliance on these representations in the manner hereafter alleged, or with the expectation that Plaintiff would so act.

60.     Plaintiff, at the time that these representations were made by Aurora had no reason to suspect they were fraudulent.  In good faith reliance upon these representations, Plaintiff was induced to and did enter into the forbearance agreement as alleged herein.  Had the Plaintiff known the actual facts, he would have not signed the forbearance agreement.

61.     Defendant ING is the successor in interest to Defendant SCME.  Moreover, ING is a holder in due course and jointly and separately liable for the acts of SCME.

62.     As a direct and proximate cause of the fraudulent conduct of the Defendants, Plaintiff has suffered an amount of damages over $25,000.00 which will be proven at trial.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

### THIRD CLAIM FOR RELIEF
### (Breach of Contract)

COMES NOW PLAINTIFF and for a separate and distinct CLAIM FOR RELIEF for Breach of Contract against Defendants ING, Aurora, and Quality, alleges as follows:

63.     Plaintiff repeats and re-pleads paragraphs 1 through 62 and incorporates the allegations by reference as though fully set-forth herein.

64.     On or about October 2, 2009, Plaintiff entered into a written forbearance contract with Defendant Aurora whereupon Plaintiff agreed to make a monthly payment to Aurora for six months.  In exchange, Aurora and its principals and agents would not sell the Property and review the Plaintiff's request for a permanent loan modification.

65.     Plaintiff made all required payments under the forbearance contract for six months.

66.     After the six-month period, Plaintiff and Aurora agreed that the Plaintiff would continue to pay the forbearance monthly payment in exchange for Aurora not selling the Property and considering the Plaintiff for a permanent loan modification.

67.     Pursuant to that understanding, Plaintiff made payments in April 2010, May 2010 and June 2010.

68.     In June 2010, Plaintiff made the same monthly payment pursuant to the forbearance agreement to Aurora.  However, after the June payment was accepted by Aurora, Plaintiff was informed by Aurora that his house was sold at a Trustee's Sale on or about June 2, 2010.

69.     Aurora was acting as the agent for its principals, including ING Bank and/or MERS.

70.     On its principals' behalf, Defendant Aurora ordered Quality to sell the Property at a Trustee's Sale in violation of the forbearance agreement between the Plaintiff and Aurora.

71.     Plaintiff made his May 5th, 2010 payment where he would be paid up until June 4th, 2010.  Defendants sold the property on June 2nd, 2010 before the May payment had expired.

72.     Plaintiff and Aurora had a valid contract.

73.     Plaintiff gave valuable consideration in the form of monthly payments, filling out a loan modification application, supplying up to date financial information for the loan modification, and by taking no further action when Aurora told Plaintiff to do nothing and just wait.

74.     Plaintiff complied with all of the terms of the contract and has duly performed all the conditions required on his part.

75.     Defendant Aurora materially breached the contract by selling the Plaintiff's Property and not considering the Plaintiff's loan modification request in good faith.

76.     Plaintiff relied on Aurora's promise to not sell the property while Plaintiff is making the payments and Aurora is reviewing the loan modification application in good faith.

77.     Plaintiff changed his position by relying on Aurora's promises by taking no further action.  Had Aurora not made any promises to stop the foreclosure sale, Plaintiff would have filed a Chapter 13 bankruptcy and restructured his loan by paying off all arrears over a 60 month period.

78.     Plaintiff has suffered damages as direct and proximate cause due to Defendants, entitling Plaintiff to compensatory damages and a return of the Property to his ownership and is entitled to an injunction barring the sale of the Property to a third party during the course of this litigation.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES, AN INJUNCTION, AND OTHER RELIEF AS PRAYED.

### FOURTH CLAIM FOR RELIEF
**(Breach of the Implied Covenant of Good Faith & Fair Dealing)**

COMES NOW PLAINTIFF and for a separate and distinct CLAIM FOR RELIEF for the Breach of the Implied Covenant of Good Faith and Fair Dealing against Defendants ING, Aurora and Quality, alleges as follows:

79.     Plaintiff repeats and re-pleads paragraphs 1 through 78 and incorporates the allegations by reference as though fully set-forth herein.

80.     Plaintiff and SCME agreed to a contract through the Subject Note whereupon SCME would lend funds to the Plaintiff to purchase the Property.

81.     Defendant ING became the successor in interest to Defendant SCME and absorbed all the rights and liabilities contained within the Subject Note.

82.     Plaintiff and Defendants had a valid contract.

83.     Defendant Aurora, the agent of Defendant ING, agreed to a Forbearance Contract with Plaintiff whereupon Plaintiff would make a monthly payment in exchange for Aurora agreeing not to sell the Property and review the Plaintiff's request for a loan modification.

84.     Aurora and Plaintiff had a duty to act in good faith to make performance of the forbearance contract and the Subject Note possible.

85.     Plaintiff complied with the terms he agreed upon and duly performed with Aurora by making his monthly payment pursuant to the forbearance agreement for nine months.

86.     Aurora and Quality, breached the implied covenant of good faith and fair dealing by selling the Property even though Plaintiff was making his forbearance payments in good faith.

87.     Defendants ING, Aurora, and Quality directly and proximately caused the breach by selling the Plaintiff's Property even though Plaintiff was making his forbearance payments.

88.     Plaintiff has been damaged in a sum greater than $25,000.00 because Aurora breached its covenant of good faith and fair dealing.

### FIFTH CLAIM FOR RELIEF
**(Promissory Estoppel)**

COMES NOW PLAINTIFF and for a separate and distinct CLAIM FOR RELIEF for Promissory Estoppel against Defendants ING, Aurora, and Quality, alleges as follows:

89.     Plaintiff repeats and re-pleads paragraphs 1 through 88 and incorporates the allegations by reference as though fully set-forth herein.

90.     Defendant Aurora, on behalf of its principals including Defendants ING and/or MERS, made a clear and unambiguous promise to the Plaintiff that they would not sell the Plaintiff's Property while they reviewed the Plaintiff's paperwork for a loan modification provided that Plaintiff made the monthly forbearance payment to Aurora.

91.     The promise not to sell the Property was breached by Defendant Aurora, acting on behalf of its principals, when it had Defendant Quality sell the Plaintiff's Property at a Trustee's Sale on or about June 2, 2010.

92.     Plaintiff relied on the promise made by Defendant Aurora as he continued to make the monthly forbearance payment to Aurora.

93.     Plaintiff's reliance on Aurora's promise was reasonable and to his detriment. Aurora had reason to expect reliance and Aurora wanted Plaintiff to rely on the promise in order to avoid Plaintiff filing bankruptcy.

94.     Plaintiff materially changed his position by relying on Aurora's promise not to sell the property while Aurora was reviewing plaintiff's loan modification and Plaintiff was making monthly payments.  Had Plaintiff not relied on Aurora's promise or had Aurora not made the promise, Plaintiff would have filed a Chapter 13 bankruptcy and restructured his loan by paying off the arrears over a 60 month period.

95.     Plaintiff's reliance on Aurora's promises was both reasonable and foreseeable.

96.     Plaintiff relied upon Aurora's promise to his detriment as he has suffered significant damages when the Property was sold at a Trustee's Sale to Defendant ING Bank.

97.     Injustice can only be avoided if the Court enforces the promise that Defendant Aurora made to the Plaintiff.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES, AN INJUNCTION, AND OTHER RELIEF AS PRAYED.

## SIXTH CLAIM FOR RELIEF

### (Wrongful Foreclosure)

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for Wrongful Foreclosure against Defendants ING, MERS, Aurora and Quality, alleges as follows:

98.    Plaintiff repeats and re-pleads paragraphs 1 through 97 and incorporates the allegations by reference therein as though set forth below.

99.    MERS was not the beneficiary of the Deed of Trust.

100.    ING claims that they are and were the beneficiary of the Deed of Trust throughout the foreclosure process (see exhibit E).

101.    Two separate Defendants, who are two very separate entities, both claim they are and they were the Beneficiary of the Deed of Trust throughout the foreclosure process. At least one Defendant is lying.

102.    MERS never had any ownership or any interest in the note, thus they cannot be the Beneficiary of the Deed of Trust.

103.    MERS is the nominee for the Lender, SCME. Since SCME ceased business operations at the end of 2007, see exhibit F, attached and incorporated by this reference.

104.    Since MERS was not the beneficiary of the Deed of Trust, Quality was never properly substituted in as Trustee.

105.    Quality as an illegal trustee performed the unlawful foreclosure sale. The foreclosure is void.

106.    As a direct and proximate result of the wrongful conduct of Defendants ING, Aurora, and Quality, as herein alleged, Plaintiff has been damaged in a sum in excess of $25,000.00, subject to proof at the time of trial.

107.    As a further result of the void foreclosure sale held by Defendants ING, Aurora, and Quality, an order quieting title to the Property as of the date of the filing of this First Amended Complaint holding title in Plaintiff's name should be issued.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES, AN INJUNCTION AND OTHER RELIEF AS PRAYED.

## SEVENTH CLAIM FOR RELIEF

### (Quiet Title)

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for Quiet Title against all Defendants claiming an interest in the Property, including ING Bank, alleges as follows:

108.    Plaintiff repeats and repleads paragraphs 1 through 107 and incorporates the allegations by reference therein as though set forth below.

109.    Plaintiff is the owner in fee of title to property commonly known as 3148 Toopal Drive, Oceanside, CA 92054.  The basis of Plaintiff's title is a grant deed to the property. The Legal Description of said property is as follows:

APN: 145-193-26

PARCEL 1: LOT 144 OF WANIS VIEW ESTATES UNIT NO. 1 IN THE CITY OF OCEANSIDE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 14539 FILED IN THE OFFICE OF THE COUNTY RECORDER IN SAN DIEGO COUNTY, FEBRUARY 11, 2003.

PARCEL 2: A NON-EXCLUSIVE EASEMENT IN COMMON WITH OTHER OWNERS, FOR ACCESS, INGRESS, AND EGRESS, OVER, IN, TO, AND, THROUGH THE ASSOCIATION PROPERTY DESCRIBED IN THE DECLARATION, SUBJECT TO THE LIMITATIONS SET FORTH THEREIN, WHICH EASEMENT IS APPURTENANT TO THE RESIDENTIAL LOT DESCRIBED ABOVE.

110.    Defendants claim that they are the holder, duly appointed servicer and trustee under the Subject Note and Subject Deed of Trust and that as a result they had the right to foreclosure upon the Subject Property pursuant to the Subject Deed of Trust.  In fact, Plaintiff is informed and believes and thereon alleges that said Defendants are in fact not the beneficiary and trustee under the Subject Note and Deed of Trust whereas Quality is in fact not a duly and

properly appointed trustee of the Subject Deed of Trust, by reason of the fact that the entity that allegedly substituted Quality as trustee, instead of and in place of the actual trustee Stewart Title Company, lacked the authority and/or ability to do so in that MERS was not the actual beneficiary or agent of the actual holders of the Subject Note and Subject Deed of Trust and pursuant to California Civil Code Section 2924a, only a beneficiary may substitute the trustee in a deed of trust.

111.    Only the actual beneficiary and/or their rightful agent along with the actual and/or rightful trustee of a deed of trust may exercise the power of sale and conduct a foreclosure sale pursuant to the terms of the Subject Deed of Trust.

112.    Defendants claim and assert interests in the above-described real property that are adverse to Plaintiff. An active dispute now exists between Plaintiff and Defendants, and each of them, in that Defendants claim they held the right to hold a non-judicial foreclosure sale of the Property pursuant to the Subject Note and Subject Deed of Trust and Plaintiff, as alleged herein, contends that they did not have the right or standing to do so and such sale is void. Defendants further claim they now hold rightful title to the Property in violation of Plaintiff's right to title to the Property. The claim of Defendants is without any right whatsoever, and Defendants have no right, estate, title, or interest in the Property, or any part of it.

113.    The obligation under the Deed of Trust has been fully satisfied.

114.    The Deed of Trust has been paid in full and is extinguished.

115.    Plaintiff seeks quiet title as of the date the First Amended Complaint is filed.

ALL FOR WHICH PLAINTIFF SEEKS QUIET TITLE, EXPUNGEMENT OF THE NOTICE OF DEFAULT AND NOTICE OF SALE, AND OTHER RELIEF AS PRAYED.

## EIGHTS CLAIM FOR RELIEF

### (Violation of California Business & Professions Code § 17200, *et. seq*)

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for violation of California Business & Professions Code Section 17200, *et. seq.*, against all Defendants, alleges as follows:

116.     Plaintiff repeats and repleads paragraphs 1 through 115 and incorporates the allegations by reference therein as though set forth below.

117.     Plaintiff has been injured and harmed directly by the acts of the Defendants, and each of them, committed in violation of California Business & Professions Code Section 17200.  In particular, Defendants ING, MERS, Aurora, and Quality wrongfully foreclosed upon the Property without standing or lawful right to do.    As a result, Plaintiff has suffered actual harm and damage including the loss of the Property through foreclosure.

118.     Defendants Aurora, MERS, SCME and ING engaged in unlawful, fraudulent and unfair conduct.

119.     All fraud and violations of California's non-judicial foreclosure process as described herein that were undertaken by Defendants constitute fraudulent conduct, unlawful conduct, and unfair competition in violation of Section 17200 *et seq.*

120.     Defendant Aurora engaged in unlawful, fraudulent and unfair conduct by foreclosing on the subject property when they promised Plaintiff they would not.

121.     Defendant SCME engaged in a plan to defraud Plaintiff during the origination

122.     Defendants' acts, omissions, misrepresentations, custom practices, and non-disclosures as set forth in this First Amended Complaint, whether or not in violation of the law as set forth herein are otherwise unfair, unconscionable, unlawful and fraudulent.

123.     Defendants' acts, custom, and practices are unfair to consumers in the State of California within the meaning of Section 17200; and Defendants' acts, custom, and practices are fraudulent within the meaning of Section 17200.

124.     Plaintiff has suffered injury in fact by the Aurora, ING, SCME and MERS.

125.     Pursuant to Section 17203 of the California Business & Professions Code, Plaintiff seeks an order of this Court requiring Defendants to restitutionally disgorge all ill-gotten gains and awarding Plaintiff full restitution of all monies and property wrongfully acquired by the Defendants and by means of the wrongful acts alleged herein, plus interest and attorneys' fees so as to restore any and all monies to Plaintiff which were acquired and obtained by wrongful means of such wrongful acts, and which ill-gotten gains are still retained by

Defendants.  Plaintiff additionally requests that such funds and the Property be impounded by the Court or that an asset freeze or constructive trust be imposed upon the Property to avoid dissipation and/or fraudulent transfers or concealment of such property by Defendants.  Plaintiff, and the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

126.    Defendants violated section 2924 during the foreclosure process.

ALL FOR WHICH PLAINTIFF SEEKS RESITUTION AND OTHER RELIEF AS PRAYED.

ON ALL CLAIMS, PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF:

For the First and Second Claims of Relief:

1.    Compensatory damages in excess of $25,000.00 subject to proof at trial;

2.    For punitive or exemplary damages;

For Third, Fourth, Fifth, Sixth, and Seventh, Claims of Relief:

1.    Compensatory damages in excess of $25,000.00 subject to proof at trial;

2.    An order declaring that Defendants' foreclosure sale is null and void, setting aside the foreclosure sale and restoring and quieting title to Plaintiff;

For the Eights Claim of Relief:

1.    For restitutional disgorgement by Defendants of any unlawful revenues or profits with interest thereon from the date of receipt as a result of their wrongful foreclosure and return of the title to the Property to the Plaintiff;

2.    For provisional and permanent injunctive relief halting the further sale and dispossession of Plaintiff of the Property.

///
///
///
///
///
///

On all causes of action:

      1.      For costs of suit;

      2.      For reasonable attorneys' fees;

      3.      And for all other relief the court may deem just.

Dated: 3/3/2011

                                              /s/Jeffery R. Menard
                                            Jeffrey R. Menard
                                            Attorney for Plaintiff