Jeffrey R. Menard, Esq. SBN 248508
1880 Grand Avenue
San Diego, CA 92109
Telephone: (848) 240-2566

Attorney for Plaintiff
CIRILO CRUZ

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRILO CRUZ, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>AURORA LOAN SERVICES, LLC; SCME MORTGAGE BANKERS, INC.; ING BANK, F.S.B; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.; QUALITY LOAN SERVICE CORPORATION; and DOES 1 to 100<br><br>    Defendants. | Adversary Case No. 11-90116 MM<br>BK Case No. 11-1133 MM13<br>Chapter 13<br><br>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT<br><br>Date: May 5, 2011<br>Time: 10:00 am<br>Dept: 1<br>Judge: Hon. Margaret M. Mann |

COMES NOW PLAINTIFF CIRILO CRUZ (hereinafter "Plaintiff") in opposition to the motion to dismiss filed by Defendants MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (hereinafter "MERS"), AURORA LOAN SERVICES, LLC (hereinafter "Aurora"), and ING Bank, F.S.B. (hereinafter "ING"). The motion to dismiss should be overruled.

**STATEMENT OF FACTS**

In this litigation, Plaintiff alleges that he has suffered harm from misconduct as a result of loans that Plaintiff obtained on or about December 24, 2004. The first set of misconduct

occurred during the origination of the loan and the second set of misconduct in and around the foreclosure process.

On or about December 24, 2004, Plaintiff purchased a property located at 3148 Toopal Drive, Oceanside, CA 92054 (hereinafter "Property") by obtaining a first mortgage secured by the First Deed of Trust for and a Second Mortgage secured by the Second Deed of Trust for $30,000.00 from Defendant SCME MORTGAGE BANKERS, INC. (hereinafter "SCME"). Plaintiff paid $100,000.00 as a down payment on the Property.

On or about December 24, 2004, Defendant SCME in its loan origination paper falsely represented to the Plaintiff 1) the true cost of the loan in the paperwork that was provided to the Plaintiff by understating the finance cost and the interest rate on the loans; and 2) falsely represented that MERS was the beneficiary on the Deed of Trust when MERS in fact was not the true beneficiary on the Deed of Trust. Had Plaintiff known any of these misrepresentations, he would have never agreed to the loans on or about December 24, 2004. Defendant ING is the successor in interest to Defendant SCME.

Defendant Aurora eventually became the servicer of Plaintiff's First Mortgage.

A Notice of Sale was filed on September 9, 2009. Finally, Defendant Aurora began working with the Plaintiff on alternatives to foreclosure. On or about October 2, 2009, Plaintiff and Aurora agreed to a forbearance contract whereupon Aurora would not sell the Plaintiff's property and would consider Plaintiff for a permanent loan modification in exchange for the Plaintiff making a fixed monthly payment to Aurora for every month for a period of six months.

Plaintiff made all six payments as required under the forbearance contract. After the six-month period, Plaintiff contacted Aurora on how to proceed. Aurora informed him that they would not sell the Property while they considered his loan modification request provided he continued to make the same month payment that was required under the forbearance contract. In April 2010 and May 2010, Plaintiff paid Aurora the amount required under the forbearance agreement each month. In June 2010, Plaintiff paid the amount required under the forbearance to Aurora. However, after the payment was accepted by Aurora, he was informed by Aurora that his house was sold in violation of the agreement.

Plaintiff subsequently had his loan documents analyzed by a mortgage professional on or about June 17, 2010 and discovered multiple violations of state and federal law, including fraud, that occurred during the origination of his loan.

On January 25, 2011 Plaintiff filed for Bankruptcy under Chapter 13 as case number 11-01133-MM13. On March 3, 2011 Plaintiff filed an Adversary Proceeding as case number 11-90116-MM.

## LEGAL STANDARD FOR A MOTION TO DISMISS

A motion to dismiss brought pursuant to the Federal Rules of Civil Procedure tests the legal sufficiency of the claims stated in the pleadings. Navarro v. Block, 250 F. 3d 729, 732 (9th Cir. 2001). In deciding such a motion, the court must decide whether the facts as alleged, if true, would entitle the Plaintiff to some form of relief. Dismissal is only proper where there is either a lack of a legal theory or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (1990). Unless the Court, based upon all the alleged facts or reasonably assumed facts, can find no claim is stated or can be stated under the facts alleged, the motion must be denied. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978).

In conducting a review of the complaint, the court must assume that all of its allegations are true even if the court has doubts. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Dismissal is "especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development." Baker v. Cuomo, 58 F.3d 814, 818-819 (2nd Cir. 1995). A motion to dismiss should be viewed with disfavor. Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997).

## ARGUMENT

A.    PLAINTIFF HAS SUFFICIENTLY PLED HIS INTENTIONAL
       MISREPRESENTATION AND NEGLIGENT MISREPRESENTATION CLAIMS.

   1.    **The statute of limitations related to the origination of the loans equitably tolled on or about June 17, 2010.**

The statute of limitations for fraud claims is three years from the time of the conduct <u>or</u> the discovery of said conduct. *See* Cal. Civ. § 338(d). The same statute of limitations applies to the negligent misrepresentation claim because it is a form of fraud. <u>See, i.e. Luksch v. Latham</u> (N.D. Cal. 1987) 675 F.Supp. 1198, 1204, n. 10.

At the time of the origination of the loans, Plaintiff had no reason to suspect any fraud on the part of Defendant SCME. There were no circumstances for which would have triggered

an inquiry into searching for said fraud.  Plaintiff was not able to discover the fraud until his loan documents were reviewed by an attorney on or about June 17, 2010, thereby permitting Plaintiff's fraud claim in relation to the origination of the loans.

Moreover, the date of discovery or when Plaintiff should have discovered the fraud is an issue of *fact*, not an issue of law.  It is only an issue of law in the sense that Plaintiff has to allege he is relying upon the discovery rule as a basis to permit his fraud claims on the face of the complaint, which Plaintiff clearly has (See Paragraph 34-38 in Plaintiffs FAC).  Defendants are arguing that the Court reach this *factual* conclusion on a motion to dismiss, which is inappropriate and untimely.  Plaintiff does not possess the mathematical skills required to discover said fraud, in fact, very few people do.  Plaintiff would not have discovered said fraud until 2015 when the fraud would have begun.

Thus, based on the above, the statute of limitations does not bar the Plaintiff's intentional misrepresentation and negligent misrepresentation claims insofar as they pertain to the origination of the Plaintiff's loans.

### 2. Plaintiff Does Identify Intentional Misrepresentation

According to the Adjustable Rate Rider (attached as exhibit A and incorporated by this reference), the date that the interest may change is January, 2010.  The Truth-In-Lending Disclosure Statement clearly states "THE PAYMENT SCHEDULE AND ANNUAL PERCENTAGE RATE DISCLOSED HERE ARE ESTIMATED ASSUMING THAT THE CURRENT INDEX RATE WILL NOT INCREASE NOR DECREASE THROUGHOUT THE LOAN TERM".  The interest rate used to calculate the payments between 2/1/2010 – 1/1/2015 is 5.875% whereas, the interest rate used to calculate the final set of payments is 4.875%.  After the first 60 months, the loan becomes a variable rate loan, the TILA states that all estimates are based on the interest not changing yet, the second and third set of payments are based on different interest rates.  This is a fraudulent practice as it is meant to hide the true cost of the loan. The actual value of the interest rate used is a question of fact not law.

### 3. Plaintiff Has Adequately Pleaded Negligent Misrepresentation

    **4.    Defendants Have Not Motioned To Dismiss The Fraud Claims Associated With The Misrepresentations That Occurred Before, During Or Following The Forbearance Agreement**

Defendants did not address any of the Fraudulent claims that are listed in Paragraph 40-44 of the First Amended Complaint.

**B.    PLAINTIFF HAS PLED A VALID CLAIM FOR BREACH OF CONTRACT.**

    **1.    The statute of frauds does not apply.**

First, Plaintiff had a written forbearance agreement from October 2009 until March 2009. Aurora and Plaintiff extended the forbearance agreement until it was breached in June 2009 when the Property was sold. Evidence of the continuance of the written forbearance agreement consists of the fact that Aurora continued to accept the same forbearance payment after March 2009.

More importantly, Defendants' reliance on *Secrest v. Security Nat'l Mortg. Loan Trust 2002-2*, (2008) 167 Cal. App. 4th 544, 552, is misplaced. It is a very narrow ruling that decided that making a payment alone is not enough for estoppel[1]. As per the *Secrest* court, "[i]n addition to part performance, the party seeking to enforce the contract must have changed position in reliance on the oral contract to such an extent that application of the statute of frauds would result in an unjust or unconscionable loss, amount to an effect of fraud." *Id.* at 555. In short, consideration is enough to estop the statute of frauds[2] and *Secrest* does not apply in those circumstances.

Plaintiff has unambiguously stated that he changed his position (See Paragraph 77 in the FAC). *Secrest* simply does not apply because per *Secrest* the Plaintiff changed his position. This case is not a case of payment alone! The Court in *Secrest* stated that a change in position is enough to remove the oral modification from the statute of frauds and the Supreme Court of California in *Raedeke v. Gibraltar Sav. & Loan Assn.* 10 Cal. 3d 665, 517 P.2d 1157 Cal. (1974) stated that consideration is also enough to remove an oral modification from the Statute of

---

[1] "We do not address what other actions in reliance on the January 2002 Forbearance Agreement might have been sufficient to raise an estoppel to asset the statute of frauds because the Secrests asserted ***only*** the payment of money as the basis for the estoppel." *Secrest* at 557 (emphasis added).

[2] *Raedeke v. Gibraltar Sav. & Loan Ass'n* (1974) 10 Cal. 3d. 665, 673 (finding that there was consideration by the act by trying to find a solvent buyer).

Frauds "We have held that if there exists sufficient consideration for an oral modification agreement, then full performance by the promisee alone would suffice to render the agreement 'executed' within the meaning of section 1698". On top of making the required monthly payments pursuant to the Forbearance agreement, Plaintiff also gave additional consideration in the form of a loan modification application that was submitted. Plaintiff filed out a loan modification application and submitted it to Aurora expecting Aurora to review the loan modification application in good faith. Following the reasoning in *Secrest* and *Raedeke* Chief Judge Irma E. Gonzalez in the Southern District of California ruled that a borrower that filled out a loan modification application was enough consideration to remove an oral modification from the Statute of Frauds in *Vissuet v. Indymac Mortg. Services*, Slip Copy, 2010 WL 1031013. In the case at hand here, the Plaintiff has changed his position and has provided additional consideration thus the narrow ruling of *Secrest* simply does not apply.

### 2. Defendants Did in Fact Breach The Covenant Of Good Faith And Fair Dealings

Defendants breached their covenant of good faith and fair dealings for all the reasons listed in Intentional Misrepresentation, Negligent Misrepresentation, Breach of Contract and Wrongful Foreclosure

### 3. Plaintiff Relied on Aurora's Promise Not To Foreclose And Changed His Position As A Result Of The Aurora's Promise

Defendants seem to think that the claim of Promissory Estoppel is based solely on the furnishing of payments pursuant to the forbearance agreement. This is not the case and as such *Secrest* once again does not apply. Plaintiff relied on Aurora's promise not to foreclose on said property while they are being reviewed for a loan modification (See paragraph 90 in Plaintiff's FAC) and in reliance (*Id* paragraph 92) Plaintiff changed his position (*Id* Paragraph 94). Plaintiff has unambiguously stated in Paragraph 94 of the FAC that had he known his modification was denied and MERS would foreclose on his home then he would have filed a Chapter 13 bankruptcy and restructured the loan over a 60 month period.

### C. DEFENDANTS WRONGFULLY FORECLOSED ON SUBJECT PROPERTY

The case at hand is different than in *Gomes v. Countrywide Home Loans, Inc.,* 192 Cal App. 4th 1149 (2011) in a few different asepcts.  First of all, we have two separate and distinct entities both claiming to be the beneficiary during foreclosure and secondly, we are not asking the court to determine if MERS has standing to foreclose.

As discussed below MERS was probably never the true beneficiary of the note and deed of trust and as a result lacks the authority to foreclose.  The Court in *Gomes* alluded that MERS does not have authority to foreclose as beneficiary (*Id* FN9) but only has authority to foreclose as nominee to the Lender.  In the case at hand, MERS unambiguously states that they are acting as Beneficiary in the Substitution of Trustee.  MERS is not claiming to be the nominee for the Lender.  Similarly, because MERS was never the true beneficiary of the deed of trust MERS can only assign what it legally held. See *In Re: Walker*, (May 20, 2010 E.D. Cal. Bank.) 10-21656 .  Thus for analysis purposes Quality Loan Service Corporation (QUALITY) can only be assigned what MERS held legally so it is important to analyze what MERS legally held.

The power of sale under the subject deed of trust is held by the beneficiary and the trustee of the note and deed of trust. Only the holder of the power of sale has the right to foreclose.  California Civil Code section 2932.  A sale by a person or entity other than the holder of the power of sale is void.  *Hall v. Crowley*, (1909) 12 Cal. App. 30

As noted in Movants pleadings, the beneficiary claiming the right to foreclose, MERS, in fact is not the beneficiary of the note and deed of trust and therefore lacks legal authority to hold a foreclosure.  MERS can only assign to QUALITY what interest they have.  The analysis begins by considering what MERS actually is.  As noted by the Court *in Landmark Nat. Bank v. Kessler*, 216 P.3d `58, 164 (Kan. 2009) , citing *Mortgage Electronic Registration Systems, Inc. v. Nebraska Dept. of Banking & Finance*, 704 N.W.2d 784, 785 (Neb. 2005),

MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS system, MERS becomes the Mortgagee of record for participating members through assignment of the Member's interests to MERS.  MERS is listed as the grantee in the official records maintained at country register of deeds offices.  The lenders retain the promissory notes, as well as the servicing rights to the mortgages.  The lenders can then sell

these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating members.  (where MERS disclaimed a position in order to avoid having to register as a mortgage lender).

In 1993, members of the real estate mortgage industry created MERS, an electronic registration system for mortgages. Its purpose is to streamline the mortgage process by eliminating the need to prepare and record paper assignments of mortgages, as had been done for hundreds of years.  To accomplish this goal, MERS acts as nominee and as mortgagee of record for its members nationwide and appoints itself nominee, as mortgagee, for its members' successors and assigns, thereby remaining nominal mortgagee of record no matter how many times loan servicing, or the mortgage itself, may be transferred.  MERS hopes to register every residential and commercial home loan nationwide on its electronic system. *Merscorp, inc. v. Romaine*, 861 N.E.2d 81, 86 (N.Y. 2006).  The problem with this system as applied to this case and motion is that numerous courts of the United States have held that MERS has no rights to the promissory note and deed of trust and therefore lacks the authority to foreclose, relieve the automatic stay or substitute the trustee.  A foreclosure requires unity of ownership, by the same party, of both the note and the (incident) mortgage instrument.  As noted by the court *in In re Hawkins*, 2009 WL 901766 (Bankr. D. Nev. 2009), aff'd, *Mortgage Electronic Registration Systems, Inc. v. Chong*, et al., 2:09 CV 00661 KJD LRL (D. Nev. 2009) MERS own internal documents state "MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgage properties securing such mortgage loans." (Emphasis in original)  The *Hawkins* court went on to find " it is obvious from MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever to any payments, to any servicing rights, or to any of the properties secured by the loans.  To reverse an old adage, if it doesn't walk like a duck, talk like a duck, and quack like a duck, then it's not a duck." *Id* at 3.

What MERS does claim to be is the nominee for the holder of the deed of trust and/or the beneficiary of the deed of trust alone.   The Supreme Court of Arkansas in the matter of *Mortgage Electronic Registration Systems, Inc. v. Southwest Homes of Arkansas, Inc*., 2009 WL 723182 (Ark. 2009) found that the deed of trust provided that all payments were to be made to the lender; that the lender made all decisions on late payments; no payments on the underlying

OPPOSITION TO THE MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT BY DEFENDANTS
Cruz v. Aurora Loan Services, LLC, et. al. - 8

debt were made to MERS; and MERS did not service the loan in any way as it did not oversee payments or administration of the loan in any way.  MERS asserted to be a corporation providing electronic tracking of ownership interests in residential real property security instruments.  MERS argued in that case that it held a property interest through holding legal title with respect to the rights conveyed to the borrower by the lender. The Court's response: "We disagree". The Court found that title was conveyed to the trustee; that the deed of trust did not convey title to MERS; and that as such, MERS was not the "beneficiary" even though it is so designated in the deed of trust.  The Court held that the lender on the deed of trust was the beneficiary as it received payments on the debt secured by the property.

In fact, MERS is not only, not, the beneficiary of the note, it actually holds nothing.  For more than a hundred years the law has been that "[t]he note and mortgage are inseparable; the former as essential, the latter as incident.  An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity. " *Carpenter v. Longan*, 83 U.S. 271, 274  275 (1872).  See also *In re Vargas*, 396 B.R. 511, 517 (Bankr. C. D. Cal. 2008); *Bellistri v. Ocwen Loan Servicing, L.L.C*., 284 S.W.3d 619 (Mo. Ct. App. 2009) (finding that "mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust");  The court in *the Landmark Nat'l Bank*, supra, noted that "in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable." (Emphasis Added)  *Id*. at 166  67 (citations omitted)  See also *Ocwen Loan Servicing, L.L.C*., 284 S.W.3d 619 (Mo. Ct. App. 2009) (finding that "mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust)  See also *Graham v. Oliver*, 659 S.W.2d 601, 603 (Mo. Ct. App.1983) (citing *Cobe v. Lovan* 92 S.W. 93 (Mo. 1906) (holding that such a foreclosure sale is void)). Again, the reason for this is simple, "the mortgage goes with the note." *Rodney v. Arizona Bank*, 836 P.2d 434, 436 (Ariz. Ct. App. 1992) (quoting *Hill v. Favour*, 84 P.2d 575, 578 (1938))  As noted by the court *in  In re Hawkins*, supra.   Simply being a beneficiary or having an assignment of a deed of trust is not enough to be entitled to foreclose on a deed of trust . . .  A mortgage loan consists of a promissory note and a security instrument, typically a mortgage or a deed of trust.  When the note is split from the deed of trust, "the note becomes, as a practical matter, unsecured." Restatement (Third) of Property (Mortgages) § 5.4 cmt. a (1997). A person holding only a note lacks the power to foreclose because it lacks the security, and a person holding only a deed of

trust suffers no default because only the holder of the note is entitled to payment on it. See Restatement (Third) of Property (Mortgages) § 5.4 cmt. e (1997). "Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper." 4 Richard R. Powell, Powell on Real Property, § 37.27[2] (2000). Id. at 4.

In the case at hand, it would appear that MERS quarterbacked the foreclosure claiming to be the beneficiary (See the Substitution of Trustee attached as exhibit B to Defendants Request for Judicial Notice), whereas in the Trustee's Deed Upon Sale (See exhibit D in Defendants Request for Judicial Notice) ING Bank, FSB claims they were the foreclosing beneficiary. If ING BANK FSB is correct, then MERS wrongfully foreclosed on the subject property.

MERS also wrongfully foreclosed on the subject property while they were paid on their mortgage. Plaintiff made the regularly monthly payment on May 5th, 2010 which would keep them paid-up until June 4th, 2010. MERS wrongfully foreclosed on the subject property on June 2nd while the Plaintiff was still paid up.

**2.     Plaintiff Does Not Fail To State A Claim Based On Identities Of The Parties**

Plaintiff simply points out contradictory statements in two recorded documents which Defendant is asking the Court to take judicial notice of.

**3.     Plaintiff Would Also Like To Point Out Forged Signatures**

Plaintiff would also like to point out that Nicole Fuentes signed the Substitution of Trustee as Vice President of MERS and also signed the Notice of Trustee's Sale as an Authorized Agent of QUALITY. One simply has to look at the two signatures to see that they are both quite different which suggests that at least one of them is a forged signature. Plaintiff would also like to point out that the notarization is dated is a different date than the signature on both the Substitution of Trustee and the Deed Upon Sale.

OPPOSITION TO THE MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT BY DEFENDANTS
Cruz v. Aurora Loan Services, LLC, et. al. - 10

### D. PLAINTIFF CANNOT TENDER AS HE IS A DEBTOR IN A CHAPTER 13 BANKRUPTCY

Plaintiff is a Debtor in the above title bankruptcy and as a result all of his assets are part of the Bankruptcy estate and thus he is legally unable to tender and should not be denied justice as a result.

There is no obligation to tender when a sale is void as a matter of law even when the claim is made post-foreclosure. *See Dimock v. Emerald Properties, LLC*, 81 Cal. App. 4th 868, 878 (2000). This is distinguishable from circumstances where there might be a factual error as part of the foreclosure process such as an incorrect loan amount on a Notice of Default or improperly served Notice of Sale. The case law that requires tender to set aside a foreclosure sale involves "technical irregularities" such as errors in service and errors in documents. Tender is a matter left to the discretion of the court, *See Storm v. America's Servicing Co.*, 2009 WL 3756629 (S.D.Cal. Nov 06, 2009). "The Court is unaware of any case holding there is a bright-line rule requiring tender of the unpaid debt to set aside a sale in other circumstances, such as where a trustee allegedly sells property that is not encumbered" *Humboldt Sav. Bank v. McCleverty* 161 Cal. 285, 119 P. 82 (Cal.1911).

### E. PLAINTIFF HAS SUFFICIENTLY PLEAD A CLAIM FOR UNFAIR BUSINESS PRACTICES

Due to Proposition 64, a Plaintiff must allege that he has suffered an injury in fact and lost money or property as a direct result of the wrongful conduct. *Branick v. Downey Savings & Loan Assn.*, (2006) 39 Cal.4th 235, 241.

Throughout the Plaintiff's first amended complaint, he pleads specific facts as to how he has lost money and property. In particular, representatives of Defendant Aurora specifically informed him that Aurora would not sell his Property if Plaintiff complied with the forbearance agreement.

Even if Defendants assert that Plaintiff has not suffered damages, Plaintiff without a doubt has lost property. Therefore, Plaintiff has standing to bring a Section 17200 claim against Defendants. California's Section 17200 establishes three forms of unfair competition: 1) unlawful, 2) unfair, or 3) deceptive or fraudulent. *Cel-Tech Comm. v. L.A. Cellular Tel. Co*. (1999) 20 Cal. 4th 163, 180.

SCME violated numerous state laws and rights of customers during the origination of the loan due the fraudulent representations made in loan origination costs documents. SCME made numerous misrepresentations about the costs and benefits of the loan as discussed above. SCME fraudulently represented to the Plaintiff that he was qualified for the mortgage when in fact would not have otherwise qualified for the mortgage. SCME had a pattern and practice of inducing individuals such as the Plaintiff into these toxic adjustable rate mortgages by providing false documentation in violation of state law. Finally, MERS is deceptively listed as the beneficiary on the Deed of Trust to conceal the identity of parties such as ING who was apparently the "true" beneficiary despite having no assignment of rights recorded at the County Recorder's office. Based on the above, the facts establish that SCME would be liable under Section 17200. This is important as ING's liability is derived from SCME's liability. At the very least, these predicate causes of action of intentional misrepresentation and negligent misrepresentation exist.

Also, it is important to note that Section 17200 claims are permitted if the conduct is "deceptive" or "unfair." To show that a business practice is deceptive, a Plaintiff must show that the public is likely to be deceived by the conduct. *Walker v. Countrywide Home Loans* (2002) 98 Cal.App.4th 1158, 1169. An unfair business practice is one where it violates public policy and causes more injury than benefit to consumers. *Id*. at 1170. In the case at issue, even if there was no unlawful violation, Plaintiff alleges that he was tricked into the loans like many others that have suffered during the foreclosure crisis in this state. The public was certainly likely to be deceived such misconduct that occurred during the Plaintiff's loan origination on or about December 24, 2004.

Aurora literally sold the Plaintiff's house without any notice despite assurances that Aurora made to the Plaintiff that it would not sell the Property while Plaintiff made the forbearance payments. Such conduct is "unfair" and "deceptive" within the scope of Section 17200 by any reasonable view of the law and facts.

Based on the above, Defendants Aurora, MERS and ING are liable for violation of the Unfair Competition Law. Even though ING did not originate the loan, it is liable as a successor in interest and because it cannot claim that it was as bona-fide purchaser of the Plaintiff's mortgage and the Property at the Trustee's Sale.

## CONCLUSION

Based on the above, the motion to dismiss filed by Defendants Aurora, MERS, and ING should be denied in its entirety.

Dated: 4/9/2011                                             /s/ Jeffery R. Menard
                                                            Jeffrey R. Menard
                                                            Attorney for Plaintiff